UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA                              :
                                                      :
          - v. -                                      :        15 cr 706 (VSB)
                                                      :
JEFF YIN,                                             :
                                                      :
                    Defendant.                        :
                                                      :
------------------------------------------------------------------x


## MOTION FOR PRETRIAL RELEASE


                         DAVID E. PATTON, ESQ.
                         FEDERAL DEFENDERS OF NEW YORK, INC.
                         52 Duane Street - 10th Floor
                         New York, New York 10007

                              Attorney for JEFF YIN

Sabrina P. Shroff, Esq.
   *Of Counsel*

Allegra Glashausser, Esq.
   *Of Counsel*

TO:   PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         One St. Andrew's Plaza
         New York, New York 10007
         Attn.: Daniel C. Richenthal, ESQ.
                  Assistant United States Attorney

<u>Preliminary Statement</u>

Defendant Jeff Yin submits this Memorandum of Law in support of his motion for pretrial release. Mr. Yin is charged with conspiracy to commit bribery, bribery, conspiracy to commit money laundering, and money laundering. 18 U.S.C. §§ 371, 666 (a)(2), 1956 (h), & 1956 (a)(2)(A). The magistrate judge (Netburn, M.J.) initially ordered Mr. Yin released on conditions. Before Mr. Yin was released, however, the government advised the court that Mr. Yin possessed additional money and an unused Chinese passport, the existence of which he had forgotten to disclose to pretrial services. The magistrate judge changed her mind and ordered Mr. Yin detained, finding that he was a "significant" flight risk because of the unused Chinese passport and because she was concerned his codefendant and boss, Ng Lap Seng, would facilitate his flight. For the reasons explained below, the unused Chinese passport and Mr. Ng's money do not support detention.

Mr. Yin is a United States citizen, with no criminal record, who was the assistant to and translator for his codefendant Mr. Ng, the businessman who allegedly bribed a U.N. official. Mr. Yin's strong ties to this country, lack of any history of flight or means to flee, and the flaws in the evidence against him, all suggest that he is not a flight risk let alone a serious flight risk. This Court should, therefore, order his release pending trial.

<u>Introduction</u>

Jeff Yin is a United States citizen, who completed his education – from elementary school through college – in California, where his mother and teenage brother still live. He is fluent in English and Chinese, and, for the past few years, has worked as an assistant and translator to a prominent Chinese businessman, Ng Lap Seng ("Ng"), one of his co-defendants. He has no prior criminal justice history. Mr. Yin now moves for pretrial release.

Mr. Yin has been indicted along with Mr. Ng and Francis Lorenzo for four counts – conspiracy to bribe and commit money laundering, and bribery and money laundering – none of which carry a mandatory minimum term of incarceration. Mr. Ng is a billionaire in charge of a business empire; Mr. Yin is his 30-year-old secretary. Mr. Lorenzo was the permanent representative to the United Nations for the Dominican Republic, with the alleged power to sway U.N. officials with bribes; Mr. Yin has no influence at the U.N. There is no dispute that Mr. Yin is just an assistant with no control over how his boss uses his money. Instead, there is a potential defense argument that, even if the government could prove that Mr. Ng and Mr. Lorenzo had committed the charged crimes, that Mr. Yin lacked the intent required.

Additionally, the presumption in this case is that Mr. Yin should be released and his background undercuts any risk of flight. Fleeing would mean abandoning his mother, brother, and numerous other family and friends in the United States and ruining any possibility of a future business career. Nonetheless, the magistrate judge

decided that Mr. Yin should be detained as a flight risk based on the government's discovery of an unused Chinese passport and its conclusion that Mr. Yin could access Mr. Ng's money or that Mr. Ng would help Mr. Yin flee to China. The government now has both of Mr. Yin's passports. And, because this Court has allowed for Mr. Ng's release with conditions sufficient to secure his future appearances, Mr. Yin should no longer be detained based on any purported access to Mr. Ng's wealth.

Mr. Yin proposes that any remaining risk of flight can be ameliorated by:

- electronic GPS monitoring;

- home confinement in his mother's California residence;

- $1 million bond secured by his mother's home;

- any other conditions this court deems appropriate.

To detain Mr. Yin, the government must prove that he is a serious risk of flight and no conditions are sufficient to assure his appearance at future court proceedings. The government cannot meet this significant burden in this case. Mr. Yin is a young man with a bright future and every incentive to defend himself. Despite this, Mr. Ng and Mr. Lorenzo, as well as the two other indicted codefendants, have all been granted bail, while Mr. Yin has not. It would be fundamentally unfair for Mr. Yin to remain in jail pending trial while his much wealthier and allegedly more culpable codefendants are at liberty. This Court, therefore, should find that there are

conditions that would secure Mr. Yin's appearance in court. This Court reviews bail

decisions *de novo* and should find that Mr. Yin is entitled to pretrial release.

Facts

<u>Mr. Yin is a United States citizen with strong family ties to this country</u>

Mr. Yin, who was born in 1985 in China, moved to the United States when he

was 12 years old with his family. He attended Crescent Elementary School, El Rancho

Middle School, and Canyon High School in Anaheim Hills, California, and, then the

University of California, San Diego, majoring in economics and graduating in 2009.

While in college, in 2007, he became a United States citizen. He speaks English

fluently. Mr. Yin has no criminal history.

Currently, his mother Jillian and 14 year-old brother Jerry live in Yorbalinda,

California, about 10 or 15 minutes away from where Mr. Yin grew up. Jerry is in high

school and Mr. Yin is very close with him. The brothers i-message regularly and Mr.

Yin advises him about his school work.

Mr. Yin is also close with his mother. He uses "WeChat" to talk with her and

help her translate English documents into Chinese. He also sends her about $500

monthly to help her with expenses, and assists her in various household and family

tasks. For example, he helped her set up automatic payments for her gas and electric

bills, he recently coordinated with a friend to help her sell her used car, and he talked

to her and his brother through changing their sprinkler settings in response to the

California drought. Mr. Yin visited her in California most recently in January or

February of 2015. Since Mr. Yin's arrest his mother has been in regular contact with the Federal Defenders office and has recently flown to New York City to visit Mr. Yin in jail and support him as he moves for release. His aunt, uncle, and cousin, Wendy, Andy, and Cindy Yin, live in Rowland Heights, California. Mr. Yin also maintains a bank account in the United States.

Mr. Yin always uses his United States passport for travel. He was issued a Chinese passport before becoming a United States citizen, but has never used it because China does not recognize dual citizenship. Mr. Yin believes, therefore, that if he actually attempted to use his Chinese passport, it would be rejected. Before his arrest, he lived with his girlfriend in Beijing, but traveled regularly for work to Macau and Zhuhai, China, where Mr. Ng has offices, and to the United States.

Mr. Yin's work history

Mr. Yin has been consistently employed since his college graduation. After college, Mr. Yin worked as a customer service representative at the Far East National Bank in Irvine, California. In approximately 2010, Deloitte offered Mr. Yin a job as an associate in their Hong Kong office, so Mr. Yin moved to Hong Kong. From there, he started to work for Mr. Ng's son in China and then Mr. Ng. Mr. Yin is a young man, interested in a future business career, and, having grown up in the United States, he was eager to learn how business was conducted in China. He believed that working for Mr. Ng – a prominent Chinese businessman – would give him that experience.

There is no dispute that Mr. Yin was Mr. Ng's underling and that Mr. Yin's responsibilities were largely logistic or linguistic. Mr. Yin would not decide when Mr. Ng would travel, who he would meet, or what he would do. Instead, Mr. Ng would tell Mr. Yin what he wanted Mr. Yin to arrange and Mr. Yin would do so. Mr. Yin was paid a modest salary by Mr. Ng.

Mr. Yin explained his supportive role in his post-arrest statement, repeatedly describing his job as logistical, saying he would coordinate meeting times, book flights and hotels, translate, and that it was all "very basic." When he translated, he would "pretty much just tell[ ]" people what "Ng [was] saying." When asked if he had any "independence," he responded, "not really," and that "everything I do is according [to] Ng's instructions." Asked why Mr. Ng traveled with cash, Mr. Yin said "I don't know" and that he could not ask his boss "those [types] of questions," adding that his boss does not "share" with Mr. Yin what he does with his money. Post-arrest statement, Sept. 19, 2015 (excerpts attached as Ex. A).

<u>The Allegations</u>

In the original complaint, filed Sept. 18, 2015, Mr. Yin and Mr. Ng were accused of making false statements to the United States Customs and Border Protection in violation of 18 U.S.C. §§ 371, 1001. This complaint was dismissed and a second complaint was filed on Oct. 5, 2015, charging Mr. Yin, Mr. Ng, and Mr. Lorenzo with two counts: conspiracy to commit bribery and bribery. 18 U.S.C. §§ 371, 666 (a)(2). It also charged Mr. Ashe and Ms. Yan with additional counts.

7

In this complaint, the government described the case as involving business people playing bribes to John Ashe, the United Nations Ambassador for Antigua and Barbuda and the President of the U.N. General Assembly. Complaint ¶ 10. In exchange for the bribes, Mr. Ashe allegedly agreed to and did perform official actions for the businessmen who were seeking benefits from the U.N. and Antigua. *Id.* Specifically, Mr. Ng was "seeking to build a multi-billion dollar, U.N.-sponsored conferenced center" in Macau, China. *Id.* In separate deals allegedly arranged by Ms. Yan, Mr. Ashe allegedly supported other businessmen's interests in the U.N. *Id.*

Mr. Lorenzo was the Deputy Permanent Representative to the U.N. for the Dominican Republic; he was also on Mr. Ng's payroll, receiving a $20,000 monthly salary. Complaint ¶ 16-17. The complaint describes the bribery scheme of Mr. Ng and Mr. Lorenzo in detail, alleging that Mr. Lorenzo facilitated Mr. Ng's payments to Mr. Ashe so that Mr. Ashe would promote Mr. Ng's business dealings with Antigua and his conference center in Macau. Complaint ¶ 21-37.

Mr. Yin is described as Mr. Ng's "principal assistant" who has "assisted" Mr. Ng with communicating, wiring money, making travel plans, arranging meetings, and by being "generally present" for Mr. Ng's meetings in the United States. *Id.* ¶ 18. Mr. Yin's alleged involvement in the scheme is explained through email exchanges, in which Mr. Yin relays Mr. Ng's requests to Mr. Lorenzo. Complaint ¶ 39-42. For example, the complaint states that Mr. Yin sent an email to Mr. Lorenzo with the subject line, "From Ng," saying that Mr. Ng had told Mr. Yin to write to Mr. Lorenzo

asking for a meeting in New York because Mr. Ng's "top priority" was the conference center; the email also asked Mr. Lorenzo to prepare a brochure for the conference center. Complaint ¶ 39. Mr. Yin later followed up by saying that "Mr. Ng has given you a deadline to complete the task of obtaining approval" for the project. Complaint ¶ 39. There is no allegation by the United States that Mr. Yin had any control over what Mr. Ng did with his money or that he stood to gain from Mr. Ng's relationship with the U.N.

An indictment was filed on Oct. 20, 2015, indicting Mr. Yin, Mr. Ng, and Mr. Lorenzo with conspiracy to commit bribery, bribery, and conspiracy to commit money laundering and money laundering. 18 U.S.C. §§ 371, 666 (a)(2), 1956 (h), & 1956 (a)(2)(A). Ms. Yan was indicted for three counts of bribery, conspiracy to commit money laundering, and money laundering. Mr. Ashe was charged with filing false income tax returns.

<u>Bail Application before the Magistrate Judge</u>

On September 19, 2015, the day of his arrest, Mr. Yin appeared with counsel before Magistrate Judge Sarah Netburn for his presentment on the original, now dismissed, complaint. The government argued that Mr. Yin should be detained because the "risk of flight is severe" because Mr. Yin was "essentially a Chinese national" and was "employed by an extraordinarily wealth Chinese developer." Tr. 5-6. The court disagreed, outlining parameters for bail: a $1 million bond secured by $250,000 in cash or property, co-signed by three financially responsible family

members, home detention in California with his mother, with location monitoring, and surrendering of his passport. Tr. 25. It gave the government, however, time to proffer additional information if it believed this bail package was not sufficient. Tr. 26-27.

After this initial hearing, the government searched Mr. Yin's travel bag, which contained an unused Chinese passport. Gov. Ltr. Sept. 25. Based on this passport, the government asserted that there were "no conditions of release" that could "reasonably ensure" that Mr. Yin would not "seek to obtain a replacement" Chinese passport. *Id.* The bag also had about $15,000 and a key for a safe deposit box that had about $430,000, figurines, and pottery. *Id.*; Gov. Ltr. Sept. 29. The government also found receipts from an Atlantic City casino indicating that – contrary to the government's sworn complaint – Mr. Ng had deposited a large sum of money at the casino. Gov. Ltr. Sept 29.

Defense counsel responded, affirming that she had been in the process of informing the government about the Chinese passport when she received the government's letter about it. *Id.* Counsel further told the court that Mr. Yin had never used the passport and was not sure if it was still valid, and argued that his failure to disclose this was understandable because he was under considerable stress and time pressure during the initial hearing and when interviewed by the FBI. Def. Ltr. Sept. 25.

On September 29, 2015, the parties again appeared before the magistrate judge. The government argued that Mr. Yin made "intentional lies" about his passport and his access to Mr. Ng's money. Tr. 15. Counsel disputed this, explaining that Mr. Yin "travels constantly," did not unpack his bag each time, and had the unused Chinese passport in the bag from prior trips. Tr. 8, 17. Mr. Yin kept various other documents in his travel bag that – like his unused passport – he did not actually need for travel, including a two-year-old letter from his father, letters from his girlfriend, a photo of an ex-girlfriend, and a copy of his driver's license. Tr. 17. Additionally, the safe deposit box was Mr. Ng's; Mr. Ng owned the money and the antiques. Tr. 18.

The court concluded that the "new disclosure of the passport" was "dispositive on the issue of flight." Tr. 24-25. Because it was unused, the court believed it was to be used "only if you get yourself into the bind that you find yourself in today." Tr. 25. Additionally, the court concluded that Mr. Ng had "every incentive to facilitate [Mr. Yin's] fleeing." Tr. 25. The court ordered that Mr. Yin be detained pending trial.

Mr. Yin did not make an additional bail application before the Magistrate Judge Kevin N. Fox at his presentment on the second complaint.

<u>Bail granted for Mr. Yin's co-defendants</u>

Mr. Yin's four co-defendants have all been granted bail over the government's strenuous objections.[1] Like Mr. Yin, Mr. Ng was initially ordered detained by

---

[1] The main terms of the codefendant's packages are as follows: <u>Mr. Ng</u>:  $50,000,000 personal recognizance bond co-signed by 3 people, secured with $20,000,000 and his New York City

Magistrate Netburn on the original complaint, September 19, 2015. Dkt. No. 8 (15-mj-03369). When the second complaint was filed, however, a different magistrate, Magistrate Fox, ordered him released. In support of its appeal to this Court, the government noted that Mr. Ng is a Chinese citizen with no connection to the United States, is worth more than a billion dollars, and owns private airplanes. Gov. Ltr. Oct. 21, 2015. This Court rejected the Government's arguments, finding that there were conditions that could assure Mr. Ng's appearance at future court dates and ordered Mr. Ng's release. Tr. Oct. 22, 2015, 48-91.

With respect to Ms. Yan, the magistrate court granted release despite the government's arguments that she was a flight risk because she was a "United States citizen [who is] effectively a Chinese national," that she had told pre-trial services the "blatant lie[ ]" that she lived in Australia, when she actually lived in China, and that she was wealthy, with ties to a number of foreign countries. Tr. Oct. 16, 2015, at 3, 32.

---

apartment, home detention with electronic monitoring, a private security force, monitoring of his phone and computer, and various related conditions. Dkt. No. 35. <u>Ms. Yan</u>: $500,000 personal recognizance bond co-signed by four people, secured by her property in Virginia, home detention with GPS monitoring. <u>Mr. Lorenzo</u>: $2,000,000 personal recognizance bond co-signed by 7 people, secured with $500,000 and his mother's home, home detention with electronic monitoring at Mr. Lorenzo's mother's house. Dkt. No. 30. <u>Mr. Ashe</u>: $1,000,000 personal recognizance bond co-signed by 5 people, secured with $500,000, home detention with electronic monitoring. Dk. No. 13.

## Argument

### This Court should find that there are conditions of release that would secure Mr. Yin's appearance in court.

Mr. Yin is a 30 year-old, United States citizen, with no prior criminal history, who grew up in California, where his mother and teenage brother still live. The charges against Mr. Yin have no mandatory minimum jail term and there is every indication that Mr. Yin was only acting as a secretary and assistant to his co-defendant, Mr. Ng, during the time the offense conduct is alleged. Mr. Yin is a young man with a bright future, who has every incentive to return to court and defend himself against these charges. The presumption in this case is in favor of Mr. Yin's release and there are conditions of release that would secure his appearance in court.

The magistrate court initially agreed to a bail package including electronic monitoring, home confinement in his mother's California residence, and a $1 million bond secured by his mother's home. The magistrate court, however, changed its mind because Mr. Yin had a Chinese passport that he had not immediately disclosed and his boss and co-defendant Mr. Ng had a great deal of money, to which, the government argued, Mr. Yin had access. The court, therefore, concluded that Mr. Yin was a flight risk. There are conditions of release, however, that ameliorate both of these concerns. With respect to the magistrate judge's first concern, the government has now seized Mr. Yin's Chinese passport and there is no indication that Mr. Yin has any additional travel documents. Additionally, Mr. Yin's Chinese passport was never used and was

likely invalidated when Mr. Yin became a United States citizen eight years ago. Mr. Yin, therefore, could not use this passport to flee to China even if the government was not in control of it.

Moreover, with respect to the magistrate's second concern, your Honor has now determined that Mr. Ng, Mr. Yin's boss and co-defendant, may be released even though he is a Chinese national, with no ties to the United States except a recently-purchased apartment, access to private planes, and significant wealth. Given that this Court imposed strict bail conditions on Mr. Ng, including home confinement with 24-hour security and phone monitoring, Mr. Ng will be incapable of facilitating Mr. Yin's flight.

Finally, it would be fundamentally unfair to continue to incarcerate Mr. Yin while Mr. Ng is at liberty, Mr. Yin is not at all similarly situated to Mr. Ng: He is a United States citizen, his mother and brother live here, he is not wealthy, his family is not wealthy, and there is absolutely no indication that he has the resources to flee, or would ever consider leaving his mother and teenage brother without a home.

Because neither the passport nor Mr. Ng's money is sufficient to overcome the presumption in favor of release, this Court should find there are conditions of release that will reasonably assure Mr. Yin's appearance in court.

A.   <u>Legal Standard</u>

In deciding whether to order Mr. Yin's pretrial release, this Court "should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984)). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Because the Bail Reform Act "generally favors bail release, the government carries a dual burden in seeking pre-trial detention." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). First, the government must prove by a preponderance of the evidence that Mr. Yin poses a serious risk of flight or prove by clear and convincing evidence that he is a danger to the community. *See* 18 U.S.C. § 3142 (f)(2)(A) (government must a "serious risk that such person will flee"). Second, if the government makes such a showing, it must further show by the same quantum of proof that no conditions of release will reasonably assure Mr. Yin's appearance. *Sabhnani*, 493 F.3d at 75. (risk of flight). When conducting this inquiry, a district court must consider the factors enumerated in 18 U.S.C. § 3142(g). [1] In finding a serious risk

---

[1] 18 U.S.C. § 3142(g) reads, in relevant part:

(g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

    (1) the nature and circumstances of the offense charged . . .

of flight, more is needed than the potential for a long sentence. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam). Evidence that supports a finding of a serious flight risk includes skill in avoiding surveillance, prior flight from law enforcement, and use of aliases. *Id. See also United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000) (access to false documents factor in finding risk of flight); *United States v. Gonzales Claudio*, 806 F.2d 334, 338 (2d Cir. 1986) ("made travel arrangements for a portion of the journey under a false name").

Additionally, district court judges must "make explicit their findings with regard to the adequacy of possible conditions for release." *United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987); *see also United States v. Berrios-Berrios*, 791 F.2d 246, 253 (2d cir. 1986) ("Whatever the district court ultimately decides, it should explicate the reasons underlying its conclusion so that we may conduct meaningful review."). The

---

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person 's release . . .

requirement that courts expressly consider alternative conditions is central to the Bail Reform Act. *See id.* at 250.

The standard of review when the district court considers the magistrate's bail determination is *de novo*. *See* 18 U.S.C. § 3145 (b); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

B.   <u>Mr. Yin's appearance in court can be reasonably assured.</u>

Mr. Yin's United States citizenship, lack of criminal history, the low level nature of Mr. Yin's alleged involvement in the charges, his college degree and work history, and that his family is in California all indicate that he is not a flight risk, let alone a serious one. There is no reason that Mr. Yin would flee the United States knowing he would never be able to return to see his mother as she grew older, see his brother graduate from high school and college, visit his lifelong friends, attend his college reunion, or work in the country he grew up in. Mr. Yin would also not leave his mother and college friends responsible for the $1 million bail. Instead, he has every incentive to continue to appear in court and it is reasonable that Mr. Yin would be eager to do so and pursue the opportunity to avoid a criminal conviction.

i.    The nature and circumstances of the offense

The nature and circumstances of the offense do not support detention. Mr. Yin is accused of acting as an assistant to his boss, who was allegedly committing bribery

17

and money laundering. There is nothing sophisticated, experienced, or high-level about Mr. Yin's alleged involvement. On the contrary: Mr. Ng was in charge; Mr. Yin was just an assistant. *Cf. United States v. Lair*, No. 06 CR. 1068, 2007 WL 325776, at *4 (S.D.N.Y. Feb. 2, 2007) (nature of offense in favor of detention because defendant was "experienced, sophisticated and successful (up to a point) practitioner of fraud").

Additionally, nothing about the charges indicate that Mr. Yin has any experience in using fake identities or false documents. *Cf. United States v. Baig*, 8, 93 (2d Cir. 2013) (upholding risk of flight determination when charges "centered around false documentation"); *United States v. Hollender*, 162 F. Supp. 2d 261, 266 (S.D.N.Y. 2001) (defendant was "deeply implicated in crimes the nature and circumstances of which involve deception" including "use of false and fictitious identities" and "sophisticated supporting documentation manufactured to assist in the use of those identities").

There is also no mandatory minimum sentence for any of the charges. This is far from a case where the seriousness of the charge itself presents a risk of flight. *Cf. United States v. English*, 629 F.3d 311, 317 (2d Cir. 2011) (noting 20-year mandatory minimum and "incredibly strong" case against defendant); *United States v. Vondette*, 5 F. App'x 73, 76 (2d Cir. 2001) (defendant faced life sentence, allegations of "leadership in a multi-million dollar drug enterprise," and he was attempting to purchase a forged British passport).

Additionally, Mr. Yin's codefendants – Mr. Ng, Mr. Lorenzo, and Ms. Yan –are facing the exact same charges and have all been granted pre-trial release. Implicit in Your Honor's and Magistrate Judge Kevin N. Fox's conclusions that release is appropriate for Mr. Yin's codefendants is that the bribery and money laundering charges in the indictment are not ones that point towards detention.

The nature and circumstances of the offenses, therefore, favor Mr. Yin's release.

ii.     The weight of the evidence

Additionally, the weight of the evidence against Mr. Yin does not appear strong. In his post-arrest statement, he repeatedly told the FBI agents that he does not have any decision-making power in his job, that he simply does what Mr. Ng asks, and that he mostly completes "basic" logistical tasks. The government does not dispute this, alleging in the complaint that Mr. Yin would relay Mr. Ng's wishes to Mr. Lorenzo. Mr. Ng was the person with the money, the power, and the business interest that allegedly would have been helped through the bribery scheme. Mr. Lorenzo, a U.N. official, was the person with influence over Mr. Ashe, allegedly facilitating the transactions between Mr. Ng and Mr. Ashe; he was paid $20,000 a month. In contrast, Mr. Yin was just Mr. Ng's assistant and translator. He was not paid large sums of money, he had no influence over U.N. officials, and no business stake in the outcome of the U.N. conference center or any dealings in Antigua.

Based on this information, the government will likely face an uphill battle to prove that Mr. Yin, nonetheless, acted with the "intent to influence and reward" Mr. Ashe or that he acted with the "intent to promote the carrying on" of bribery through wire transfers made on behalf of Mr. Ng. At the very least, based on the limited information now available, Mr. Yin already has potential avenues of defense.

This case is, therefore, far from cases where the evidence is so strong against a defendant that it supports a conclusion that the defendant would flee. *Cf. United States v. Jackson*, 823 F.2d 4, 6 (2d Cir. 1987) (overwhelming evidence from nine different confidential sources to support allegations, including first-hand testimony of defendant's involvement in heroin deals). *United States v. Duncan*, 897 F. Supp. 688, 692 (N.D.N.Y. 1995) (five confidential informants willing to testify that defendant supplied, received, packaged, prepared, and sold cocaine in various forms for at least two years; corroboration by DEA investigation).

This factor too favors Mr. Yin's release.

iii.     Mr. Yin's history and characteristics

Mr. Yin's history and characteristics also point towards release. Mr. Yin is a United States citizen. He has strong family and community ties to the United States: His mother, 14-year-old brother, aunt, uncle, and cousin all live in California, where Mr. Yin went to elementary, middle and high school and then college. He grew up in California, living there from age 12 until approximately age 22. Although Mr. Yin has

been living in China while he worked for Mr. Ng, he always chose to maintain his United States citizenship rather than his Chinese citizenship. He has been employed consistently since he graduated from college, has no criminal history, and no record of drug or alcohol abuse. [2] His background strongly support release. *See United States v. Chimurenga*, 760 F.2d 400, 402 (2d Cir. 1985) (upholding court's finding that defendant was not a flight risk when he had no criminal record and was in school, despite strong evidence of involvement in armed robbery).

iv.   Mr. Yin's unused Chinese passport does not undercut all these factors in favor of release

This court should not consider the fact that Mr. Yin did not immediately disclose his Chinese passport on the day of his arrest as undercutting all these factors in favor of his release. In Ms. Yan's bail application, the magistrate judge rejected the government's argument that Ms. Yan's should be detained because she had lied about her residency. *See* Tr. Oct. 16 at 3, 27, 32 (granting bail despite government's arguments that she had lied about her residency and income). *See also Sabhnani*, 493 F.3d at 75 (overturning district court's detention order and finding home detention an appropriate release condition despite, *inter alia*, defendant's failure to report about $2 million in assets to pretrial services); *United States v. Dreier*, 596 F. Supp. 2d 831, 835 (S.D.N.Y. 2009) (finding that there were conditions to ameliorate flight risk even

---

[2] There is no suggestion that Mr. Yin – a college graduate with no prior criminal record – represents any danger to the community.

though defendant lied about a trip to Turkey, had a "palpable" motive to flee, and the allegations involved "sophisticated frauds" including "assumption of false identity").

As with Ms. Yan, Mr. Yin should not be penalized for his confusion the day of his arrest by requiring him to remain incarcerated for what will likely be a lengthy wait before trial, especially considering that he had brought the additional passport to his attorney's attention before the government found it. Shroff Aff. Sept. 25, 2015. That day was chaotic.[3] Mr. Yin had no prior experience at all with the criminal justice system and was clearly anxious about what was happening to him, asking the FBI agents numerous times during his recorded post-arrest statement when he could see a judge, whether he would get a lawyer, what the charges were, and what would happen with his case. He nonetheless answered questions from the FBI agents in a friendly and respectful manner for one and a half hours. By the time Mr. Yin met with his attorney and saw the magistrate judge, he had surely been under a great deal of stress. Pre-trial detention is too harsh a punishment for Mr. Yin's lapse in failing to immediately reveal what he had clearly forgotten – that he had a Chinese passport.

This court should also not view the existence of this passport as indicating that Mr. Yin is a serious flight risk. There are two significant barriers that would prevent Mr. Yin from using his former Chinese citizenship as a means to flee the United

---

[3] Even the government made mistakes in its initial complaint, incorrectly affirming that Mr. Ng had said he was bringing money into the United States for gambling, but had done no gambling. A few days later, the government admitted this was wrong. Gov. Ltr. Sept. 29, 2015 at p. 3, n 1 (noting that Mr. Ng had used some portion of the money described in the compliant at ¶ 19 for gambling despite the complaint asserting at ¶ 21-22, that surveillance and a database search showed Mr. Ng had not gambled during that time).

States. First, it is unlikely Mr. Yin could ever have used the Chinese passport to return to China. While Mr. Yin did have Chinese citizenship at some point, China does not allow dual citizenship. Once Mr. Yin became a United States citizen, his Chinese citizenship was effectively revoked. *See* Chinese Nationality Law, Article 9 ("Any Chinese national who has settled abroad and who has been naturalised as a foreign national or has acquired foreign nationality of his own free will shall automatically lose Chinese nationality"), *available at* http://goo.gl/8CsTo7. *See also* China Consulate General of the United States, Guangzhou, China, FAQ's http://goo.gl/VdvkCY (noting that after a Chinese child is adopted and acquires United States citizenship, the child will no longer be permitted to retain Chinese citizenship); "Visa complexity vexes parents of dual nationality Chinese children," L.A. TIMES, April 19, 2015, *available at* http://goo.gl/MNsoOY (law also prohibits Chinese citizens from having dual nationalities). Thus, it is exceedingly unlikely that any attempt by Mr. Yin to use his Chinese passport would have been successful. Second, Mr. Yin's United States citizenship would bar him from any attempt to acquire a new Chinese passport.

There is every indication that Mr. Yin could not have used his passport to flee to China, any risk is now mitigated because the government has seized this passport, and there is no indication that Mr. Yin could acquire an additional passport. This Court should, therefore, find that this one factor does not trump all those in favor of Mr. Yin's release.

v.    It would be fundamentally unfair to detain Mr. Yin while his codefendants are at liberty

All four of Mr. Yin's codefendants have been granted bail. While bail determinations must be made individually, this Court should consider the unfairness that would result if Mr. Yin – the least wealthy and least culpable of the defendants – was the only one to remain incarcerated pending trial. For example, like Mr. Yin, Ms. Yan was also accused of lying to pre-trial services. Despite this, she was still granted bail. A comparison to Mr. Ng's situation also supports Mr. Yin's release. Mr. Ng has no ties to the United States, he is not a citizen, he has no family here, and he does not speak English. He also has seemingly endless wealth, providing him with much greater means to flee, and he is an older man, for whom, a 20-year sentence could effectively be a life sentence. In contrast, Mr. Yin's ties to the United States are much stronger, his wealth is exceedingly more limited, the weight of the evidence against him is lesser, and, as a young man, he has every incentive to try to clear his name.

Additionally, that Mr. Ng and the other codefendants have been released under strict conditions precludes any possibility that any of them would help Mr. Yin flee. Mr. Ng in particular will be constantly monitored by security forces, on the telephone, and in phone calls; there is now no chance that Magistrate Netburn's concern that he could facilitate Mr. Yin's flight will be realized.

24

C. <u>Mitigation of any Flight Risk</u>

This Court should, therefore, find that there are conditions that would mitigate any risk of flight. Mr. Yin proposes the following bail conditions:

- electronic GPS monitoring;

- home confinement in his mother's California residence;

- $1 million bond secured by his mother's home.

He is also completely willing to sign any form agreeing to extradition from China. Additionally, Mr. Yin is willing to post money from his savings account to secure his bond. And his 14-year-old brother has offered $1,000 – a significant sum for a teenager – to secure the bond and show his unfailing support for Mr. Yin. His mother and brother are also willing to surrender their passports to the government.

Electronic GPS monitoring, home confinement, a significant monetary bond, and the fact that the government has seized both of Mr. Yin's passports is sufficient to secure his appearance in court. With electronic monitoring, the government will know immediately if Mr. Yin attempts to go to an embassy or consulate that could issue a passport, and, with home confinement, Mr. Yin would not have any opportunity to even make this type of trip. In any event, given that he is a United States citizen, unlike Mr. Ng, it is exceedingly unlikely the Chinese consulate would help him. It is purely speculative that he would nonetheless find a means to flee. Courts have found that GPS monitoring can ensure attendance in court even for high

profile, exceedingly wealthy defendants, charged with very serious crimes. *See, e.g.,*
*United States v. Madoff*, 586 F. Supp. 2d 240, 245 (S.D.N.Y. 2009) (Bernie Madoff was
monitored by GPS and confined to house arrest); BBC News.com, "Former IMF
chief Dominique Strauss-Kahn granted bail," May 20, 2011, http://goo.gl/oYgRM9
(Strauss-Kahn was charged with rape; bail terms included electronic monitoring and
home confinement). There is no reason that Mr. Yin's appearance in court could not
similarly be assured.

*     *     *

The balance of circumstances here indicates that Mr. Yin should be released. It
appears likely that this case will provide to be a complex one, and, especially
considering that the government may be introducing classified information in
discovery, could take quite a bit of time before trial. Being incarcerated pending trial
"substantially impacts the quality of the[ ] defense, and encourages plea bargains" all
of which "increase the likelihood that the detainee will be convicted, imprisoned, and
subjected to prolonged deprivation of liberty, privacy, and other fundamental
elements of human existence." Samuel R. Wiseman, "Pretrial Detention and the Right
to be Monitored," 123 YALE L. J. 1344 (2014). Mr. Yin should not be subjected to all
of these negative consequences. Under these circumstances, it would be unfair to
detain Mr. Yin, the one defendant to qualify for a public defender, while his
codefendants are at liberty.

26

Conclusion

For the above reasons, this Court should order that Mr. Yin be released

pursuant to the bail conditions originally proposed by the magistrate judge.

Dated:      New York, New York
            October 28, 2015

                                        Respectfully submitted,
                                    Federal Defenders of New York

                            By: _____
                                Sabrina Shroff & Allegra Glashausser
                                        Attorney for Jeff Yin
                                     52 Duane Street - 10th Floor
                                     New York, New York 10007
                                       Tel.: (212) 417-8700

27

# EXHIBIT A